CITY OF CHATTANOOGA *v.* RICHARDSON, TRUSTEE OF HAMILTON COUNTY, *et al.*

(*Knoxville*, September Term, 1948.)

(May Session, 1949.)

Opinion filed Julv 2, 1949.

J. W. Anderson and E. K. Meacham, Chattanooga, for complainant.

R. P. Frierson, Chattanooga, for defendants.

Mr. Justice Gailor delivered the opinion of the Court.

The bill was filed in this cause by the City against the defendant, as Trustee of Hamilton County, to recover $2,414.20 in commissions deducted by the defendant for money received from the State to be paid by the defendant to the City under the provisions of the Sales Tax Act, subsection 5(5), section 15, Chapter 3, Public Acts of 1947.

The Chancellor sustained a demurrer to the bill and the complainant has appealed. The only question presented is whether under a proper construction of the Sales Tax Act, the County Trustee is entitled to commissions charged and claimed by him.

The defendant claims the commission under Code Section 1621, which fixes compensation for County Trustees and provides that they shall receive one per cent commission for receiving and disbursing to the proper authority "the school fund received from the state."

By the Sales Tax Act, the Legislature, after having appropriated the first $20,000,000 of revenue from the tax for educational and certain other purposes, by Section 15, subd. 5 of Chapter 3, Public Acts of 1947, provided for the disposition of the overage over $20,000,000, and appropriated 80% of that overage to the several counties of the State to be distributed to them on the same basis now employed for the distribution of the County's share of gasoline tax. Use of the money by the counties was

restricted to certain specific county purposes,—education, aid to the blind, the aged, and dependent children. In 91 counties of the State, these moneys will be used by county authorities alone, but it is provided in the Act, that in the counties of Knox, Hamilton, Davidson and Shelby, Knoxville, Chattanooga, Nashville and Memphis will receive a specific percentage of the county's 80%. In Hamilton County, it is provided that 60% of that County's share of the 80% of the overage shall be paid to Chattanooga. The sum in question here is 1% of the 60% which was paid to Chattanooga for the fiscal year ending June 1, 1948.

Citing as its only authority, *State et al.* v. *Miner*, 176 Tenn. 158, 138 S. W. (2d) 766, the City maintains that the money was State money passing through the hands of the Trustee to meet a direct appropriation to the City. We find that the *Miner case* furnishes no authority for that contention. There, the commissions of the County Trustee on three distinct funds was involved. This Court held, in an opinion by Justice Cook, that the Trustee was not entitled to commissions on one of these funds, but was entitled to commissions on the other two. The fund on which commissions were disallowed was a trust fund set up out of State revenue in the several counties, to meet the County's obligation on certain County bonds which the State had assumed. The money involved in the present case is not a trust fund, but on the contrary, is identical with the two other funds upon which the commissions were allowed in the *Miner case*. The Sales Tax Act provides expressly for the distribution of the 80% payable to the counties as it is distributed under the gasoline tax. And Judge Cook, in

the opinion in the *Miner case*, says at page 167 of the opinion in 176 Tenn., at page 769 of 138 S. W. (2d): ". . . we are of the opinion that the Chancellor should have allowed commissions on the county's distributive share of the gasoline tax paid to the trustee upon warrant of the comptroller for use and maintenance of county roads and also on commissions for the amount of revenue received from the state under the Hall Income Tax Law. These were county funds received by the trustee from collecting officers of the State."

After considering in some detail the distribution of school funds between the counties and the cities in those counties which have cities operating their separate and independent school systems, the Chancellor, in a careful opinion, said: "There is no basis in logic or equity for the contention that trustees should be denied commissions on school funds apportioned for administration under the statute here in controversy while allowing commissions on school funds apportioned for administration under Section 2412 of the Code or Chapter 202 of the Private Acts of 1929, and there is no indication of legislative intent to make such a differentiation by disallowing trustees' commissions when the funds are apportioned and distributed as directed in Chapter 3, Public Acts of 1947. I am accordingly of the opinion that the funds in controversy are comprehended within Section 1621 of the Code which provides 'that the trustee shall receive one per centum . . . on the school fund received from the state or on money turned over to him by the clerks of the courts and other collecting officers.' The city cannot complain that the trustee actually collected only one per cent, a lesser amount than that to

which he legally might have been entitled, on the portion of the funds designated for welfare.''

With this conclusion we agree, and the decree below is accordingly affirmed.

All concur.